Douglas A. Miro (DM 2535)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Thomas J. Daly (Admission *Pro Hac Vice* pending)
Brian Brookey (Admission *Pro Hac Vice* pending)
CHRISTIE, PARKER & HALE, LLP
Wells Fargo Bank Building, 5th Floor
350 West Colorado Boulevard
P.O. Box No. 7068
Pasadena, California 91109-7068
Telephone (626) 795-9900
Facsimile: (626) 577-8800

**Attorneys for Defendants ALCATEL, S.A., ALCATEL USA, INC. and ALCATEL INTERNETWORKING, INC.**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RATES TECHNOLOGY INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALCATEL, S.A.; ALCATEL USA, INC.; and ALCATEL INTERNETWORKING, INC., <br><br> Defendants. | Case No. 04 CV 2790 (JS) (WDW) <br><br> **ECF CASE** |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT AGAINST DEFENDANT ALCATEL, S.A. AND IN SUPPORT OF CROSS MOTION TO VACATE IMPROPERLY ENTERED DEFAULT**

{00680851.1}
-1-

I.  **INTRODUCTION**

Plaintiff Rates Technology Inc. ("RTI") obtained entry of default against Defendant Alcatel, S.A. ("ASA") by misrepresenting to the Court that ASA has been served, when in fact, it has not. In addition, even if ASA had been served, good cause exists for setting aside the default, particularly given RTI's misconduct in seeking the default, ASA's lack of culpability, and the Court's lack of personal jurisdiction over ASA.[1]

II. **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

As explained in a motion filed by Defendants Alcatel Internetworking, Inc. ("AII") and Alcatel USA, Inc. ("AUSA"), this lawsuit is duplicative of a lawsuit filed nearly one year ago in California by AII against RTI and its president, Gerald J. Weinberger. As a result, AII and AUSA have filed a motion to dismiss, transfer or stay this matter. In opposing that motion, RTI acknowledged that it would make sense to stay this action until the California Court rules on a pending motion to dismiss for purported lack of jurisdiction.

In any event, although AII and AUSA have not disputed service, it is evident that RTI failed to serve ASA. Instead, RTI simply sent a copy of the complaint to ASA via Federal Express. When Defendants' counsel asked RTI's counsel, Jim Hicks, to explain why he believed this effected service, Mr. Hicks refused to do so, and instead just insisted that service was proper. Then, without any further warning, RTI filed its application for default. [Declaration of Brian K. Brookey ("Brookey Dec."), ¶ 2 and Exhibits 1 and 2.] The Clerk, apparently relying on RTI's misstatements, entered default before ASA could oppose the application.[2]

RTI's application for default was factually, legally, and tactically improper, and default should be set aside.

---

[1] ASA is not, by filing this motion, subjecting itself to the jurisdiction of this Court, and reserves the right to seek dismissal of this action for lack of personal jurisdiction once the default is vacated.

[2] The certificate of default states that service of the complaint was effected by mail, which is simply incorrect, even under RTI's theory.

## III. ASA WAS NOT SERVED

RTI concedes that because ASA is a French company, RTI was required to serve ASA under the rules established by the Hague Convention. There is only one provision of the Hague Convention that RTI contends authorized service by Federal Express -- and RTI cites only a portion of that provision, stripping it of the context that makes it clear that RTI's service was ineffective.

According to RTI, Article 5 of the Hague Convention states that a "summons and complaint 'may always be served by delivery to an addressee who accepts it voluntarily....'" [Motion, p. 5.] However, RTI fails to point out to the Court the prefatory language of Article 5, which reads: "***The Central Authority of the State*** addressed shall itself serve the document or arrange to have it served by an appropriate agency." Article 5 gives the Central Authority a number of options for effecting service, and then -- again, in the context of service by or on behalf of the Central Authority -- also notes that subject to other provisions of the Article, "the document may always be served by delivery to an addressee who accepts it voluntarily." Thus, the language on which RTI relied to obtain entry of default by its terms applies only to service by or on behalf of the Central Authority - not to service by an individual party.[3] Default was entered solely as a result of RTI's misstatement of the law regarding service, and therefore should be set aside.[4]

Finally, there is no showing at all that even if Article 5 otherwise applied, Alcatel S.A. "voluntarily" accepted service. A Federal Express package that did not indicate what it

---

[3] Two trial courts outside of this jurisdiction have, in dicta, misinterpreted Article 5 in the manner RTI is misinterpreting it here. *See Shoei Kako Co. v. Superior Court*, 33 Cal.App.3d 808, 821 (1973) and *Tamari v. Bache & Co (LEBANON) S. A. L.*, 431 F.Supp. 1226, 1229 (N.D. Ill. 1977). These decisions have correctly been characterized as "wrong" by The Committee on Federal Courts of the New York State Bar Association. *See Service of Process Abroad: A Nuts and Bolts Guide*, 122 F.R.D. 63 (1988).

[4] Regrettably, ASA has reason to suspect that the repeated misstatements of law and fact contained in the application for entry of default were intentional, and were not honest mistakes. *See Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002).

contained was delivered to M. Georges Jolibert, a mail clerk/receptionist, who signed for the package without knowing its contents. Alcatel did not "voluntarily" accept service, and Mr. Jolibert was not authorized to accept service on behalf of the corporation. [Declaration of M. Georges Jolibert, ¶¶ 2-3; Declaration of M. Philippe Boivin, ¶¶ 2-5.] In its application for entry of default, RTI represented to the Court that Mr. Jolibert was ASA's "authorized agent" for service of process, which was simply false. Thus, even if Article 5 covered service by a party and not just by the Central Authority, the conditions for effecting service through "voluntary acceptance" were not met here.

## IV. THE COURT SHOULD SET ASIDE THE DEFAULT

Even if service had been effected and default properly entered, the Court has broad discretion to set aside the default for "good cause." Fed.R.Civ.P. 55(c). As the case law RTI itself cites makes clear, this standard is less rigorous when considering whether to set aside a default than when a default judgment has already been entered. *See, e.g., Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993). Although RTI's application for entry of default appears to claim that ASA must show "excusable neglect" to set aside the default (as opposed to a default judgment), that simply is not true. As RTI knows, the three factors that courts assess in deciding whether to set aside a default are: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* (citations omitted). These standards are not applied disjunctively so that an adverse finding as to one issue will defeat a motion to vacate a default; rather, the Court should balance the three factors. *Information Systems and Networks Corporation v. United States,* 994 F.2d 792, 795-796 (Fed. Cir. 1993). And this balancing test must be undertaken against the backdrop of the general rules "that a trial on the merits is favored over default and that close cases should be resolved in favor of the party seeking to set aside default judgment." *Id.* at 795.[5]

---

[5] In its application for entry of default, RTI cited *Information Systems,* but neglected to point out this important language. Instead, RTI claims that *Information Systems* emphasized that "'default judgment is an important sanction which deters parties from ignoring the requirement to file an answer.'" [Application for Entry of Default, at p. 4.] RTI failed to quote the beginning (or for

{00680851.1}

In fact, default judgment "'is a drastic step which should be resorted to only in the most extreme cases.'" *Id.* at 796 (quoting *United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839, 845 (6th Cir. 1983)). *See also, Enron*, 10 F.3d at 96 ("because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party").

All three of the "good cause" factors justify setting aside the default in accordance with the strong policy against defaults in all but the most extreme cases.

### A.   ASA Did Not Willfully Default

When RTI attempted to serve ASA by simply sending an English-language copy of the complaint to ASA in France via Federal Express, Brian K. Brookey, counsel for the three Alcatel entities reminded RTI's counsel Mr. Hicks of the Hague Convention's service requirements. Mr. Hicks responded, "the service was valid under Rule 4." Mr. Brookey then asked Mr. Hicks to provide "evidence that you complied with Rule 4 by serving under the Hague Convention." Mr. Hicks never responded to this request, leading ASA to believe that RTI agreed that service was improper and would simply try to effect personal service through the Central Authority. The first time Defendants heard about RTI's novel theory that its service was proper under a provision of the Hague Convention that applies solely to service by the Central Authority was when it received RTI's application for entry of default.[6] ASA did not willfully default, instead, it

---

that matter, the end) of the cited language, which reads as follows: "***The government argues that*** default judgment is an important sanction which deters parties from ignoring the requirement to file an answer to a counterclaim." *Information Systems*, 994 F.2d at 797 (emphasis added). The Second Circuit agreed, but then granted relief from a default judgment after noting -- again, in language that RTI concealed from this Court -- that relief could be granted on a showing of excusable neglect. *Id.* As noted above, the "excusable neglect" standard applicable where (as in *Information Systems*) judgment has been entered is higher than the "good cause" standard applicable here, where default has been entered but no judgment has been obtained.

[6] The Central District of California, where Mr. Hicks is admitted to practice and where the first-filed action is now pending, expressly condemns Mr. Hicks's tactics. The Central District's Civility & Professionalism Guidelines, to which attorneys are expected to "voluntarily adhere...as part of a mutual commitment to the elevation of the level of practice" in the Central District, state that an attorney should not seek default without first notifying known opposing counsel. *See* Civility and Professionalism Guidelines (Exhibit 3 to Brookey Dec.), Preamble ¶ 5,

was simply waiting to be properly served (or for Mr. Hicks to explain why he believed it had been). [Brookey Dec., ¶ 2 and Exhibits 1-2.] Therefore, the default should be set aside.[7]

### B. Setting Aside The Default Will Not Prejudice RTI

The two Defendants to this action that *were* served filed a motion to dismiss, transfer, or stay this matter. In its opposition to that motion, RTI agreed (at least as a fall-back position) that it might make sense to stay this action pending the resolution of RTI's motion to dismiss the first-filed California action. Further, RTI did not even purport to serve the complaint on ASA until nearly four months after the complaint was filed. [Brookey Dec., ¶ 5.] RTI's willingness to enter into a stay of an indeterminate length -- after waiting months before even attempting to effect service -- demonstrates that there is no urgency here that would preclude granting ASA the opportunity to file a response to the complaint.

In addition, under RTI's theory, ASA's response to the complaint was due 20 days after the complaint was sent via Federal Express, or November 17, 2004. RTI rushed into Court with its application for a default judgment just four court days later, on November 23, 2004. None of the other defendants has filed an answer, the parties have not conducted a Rule 26(f) conference and therefore cannot engage in any discovery, and there is no trial date -- or any other case deadline -- in this matter. [Brookey Dec., ¶ 6.] Vacating a default entered under the circumstances presented by this case, and at such an early stage in the litigation, would not prejudice RTI in any way.

### C. ASA Has A Meritorious Defense

ASA has a meritorious defense on two grounds. First, ASA does not do any business in the United States, and the Court lacks personal jurisdiction over it.

Under New York's "long-arm statute," C.P.L.R. § 302, personal jurisdiction will arise

---

and § B.8(8).

[7] Mr. Hicks recently indicated that he intends to tell this Court that ASA intentionally chose to default. [Brookey Dec., ¶ 4.] This is false. As Mr. Hicks knows, there was never any "intent" to default, nor was there any reason to move to quash service of process when no service under the Hague Convention was even attempted. The Court need not determine credibility issues here,

over a non-resident:

    (a)    As to causes of action arising from any of the acts enumerated in this section, the court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

        1.    transacts any business within the State or contracts anywhere to supply goods or services in the State; or

        2.    commits a tortious act within the State, except as to causes of action for defamation of character arising from the act; or

        3.    commits a tortious act without the State causing injury to person or property within the State, except as to the cause of action for defamation of character arising from the act, if he

            i)    regularly does or solicits, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the State, or

            ii)    expects or should reasonably expect the act to have consequences in the State and derives substantial revenue from interstate or international commerce.

ASA does not do business in the United States, and is not subject to jurisdiction here. Moreover, the crux of any jurisdictional analysis is whether it would be fair to force a party to defend an action in the plaintiff's chosen forum -- or, put another way, whether a defendant had "fair warning" that it might be "haled into court" in that forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-474 (1985). In making this determination, the Court must analyze whether sufficient minimum contacts exist to satisfy the Due Process clause of the Fourteenth Amendment, so that maintaining the suit would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). ASA lacks the requisite "minimum contacts" with New York, and as a result has a meritorious defense.

ASA is a French company that owns stock in a number of subsidiary companies, but that does not, itself, sell any products. ASA does not conduct any business in the United States, nor does it have an office here. Although ASA has subsidiaries in the United States, those

---

because as explained above, all doubts must be resolved in favor of setting aside the default.

subsidiaries are separately incorporated in the United States. [Declaration of Philippe Boivin, Exhibit 1 to ASA's Request for Judicial Notice ("RJN"), at ¶¶ 3-5.] Based on these facts and on controlling legal authority, at least one Court in the United States has expressly found that there was no basis for finding personal jurisdiction over ASA (and that merely owning subsidiaries in the United States did not subject a company to personal jurisdiction here). [Order dated October 10, 2002, Exhibit 2 to RJN, at 5:2-6:21, 11:6-10.]

ASA's lack of contacts provide an additional basis for a defense on the merits. For RTI to obtain a judgment against ASA (on default or otherwise), RTI must prove that ASA made, used, sold, or offered to sell products in (or imported into) the United States that infringe the patents in suit. 35 U.S.C. § 271. Again, because ASA does not do business here, neither could it have infringed any patents here. And ASA should point out that by the time RTI filed its application for entry of default, AII had filed in the California Action a declaration explaining that the accused products were designed, tested and validated at AII in Calabasas, California; that marketing and sales are managed out of the same location. [See Declaration of David Cordeiro, Exhibit 3 to RJN, at ¶¶ 6-8.] Therefore, RTI sought default against ASA *knowing* that the allegedly infringing activities were undertaken, if at all, by ASA subsidiaries, and not by ASA itself. Again, ASA had no involvement in any purported infringement, and thus would have an absolute defense on the so-called "merits" of this action even if the Court had jurisdiction over it -- which it does not.[8]

---

[8] In the California Action, AII and AUSA affirmatively allege that they have not infringed any of RTI or Weinberger's patents, and that in any event those patents are invalid. The parties have not yet litigated the substance of the patent infringement accusations, nor have any of the patents' claims been construed, so it is premature to argue in detail the additional meritorious defenses of noninfringement and invalidity.

## V. CONCLUSION

Despite RTI's representations to the contrary, ASA was never served, and the time for it to respond to the complaint has not even begun to run. Even if ASA had been served, this not the type of "extreme" case that justifies maintaining a default and proceeding to default judgment. To the contrary, because the purported default was not willful, because setting aside the default will not prejudice RTI, and because ASA has a meritorious defense, the Court should grant this motion and vacate the default against it.

Dated: New York, New York
      December 13, 2004

Respectfully submitted,

_____
Douglas A. Miro (DM 2535)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

-and-

Thomas J. Daly (Admission *Pro Hac Vice* pending)
Brian Brookey (Admission *Pro Hac Vice* pending)
CHRISTIE, PARKER & HALE, LLP
Wells Fargo Bank Building, 5th Floor
350 West Colorado Boulevard
P.O. Box No. 7068
Pasadena, California 91109-7068
Telephone (626) 795-9900
Facsimile: (626) 577-8800

**Attorneys for Defendants ALCATEL, S.A., ALCATEL USA, INC. and ALCATEL INTERNETWORKING, INC.**